UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| DeVaughn Howell, *a/k/a DeVaughn LeRon Howell,*<br><br>PLAINTIFF<br><br>v.<br><br>Captain Jordan Williams, Sargent Dustin Cragg, Major Carol Holmes, and Captain Debo,<br><br>DEFENDANTS | Case No. 8:21-cv-03328-TLW<br><br><br>**ORDER** |

Plaintiff DeVaughn Howell, proceeding *pro se* and *in forma pauperis*, filed this civil action against the above listed defendants. ECF No. 1. Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations committed by persons acting under color of state law. *Id.* Plaintiff also asserts non-constitutional claims of defamation, negligence, emotional distress, and mental anguish/mental torture. *Id.* at 4. Defendants have moved for summary judgment. ECF No. 51.

This matter was referred to the Honorable Jacquelyn D. Austin, United States Magistrate Judge, pursuant to 28 U.S.C. § 36b(b)(1)(B). The magistrate judge issued a Report and Recommendation (the "Report") recommending that the Defendants' motion for summary judgment be granted in part and denied in part. ECF No. 71. Specifically, the magistrate judge recommends that the motion for summary

judgment be denied *only* with regard to Plaintiff's excessive force claim against Captain Jordan Williams and Major Carol Holmes. *Id.* at 32. In response, Williams has filed objections to the Report. ECF No. 73. No other objections have been filed to the Report. This matter is now ripe for decision.

## RELEVANT BACKGROUND

Before analyzing the Report in view of Williams' objections, the Court would first incorporate the following relevant factual and procedural background as set forth in the Report:[1]

> On September 9, 2021, Plaintiff was housed in the Edisto Unit of Lieber Correctional Institution ("Lieber"). He did not like the Edisto Unit and referred to it as a "locked down unit," in which prisoners were not allowed out for recreation and were allowed to shower only once per week. On September 9, 2021, Plaintiff told a Lieber officer that he "was going to commit suicide if [he did] not speak to anyone."
>
> Plaintiff was taken to the medical unit, where he met and talked with Ms. Birch with Defendant Captain Jordan Williams also present. Plaintiff reported that he was "having a mental breakdown" and "a crisis moment." He told Birch that he did not want to return to Edisto and added, "I will kill myself when I get back to Edisto dorm. I mean it this time." Thereafter, Birch ordered that Plaintiff be taken for Crisis Observation ("CO") and placed in a one-on-one supervision cell in the Restricted Housing Unit ("RHU").
>
> Williams began escorting Plaintiff to the RHU. However, Plaintiff stopped on the way and tried to explain to Williams that he did not want to go. When he felt that he was not being listened to, he got frustrated and "a little angry," and he began yelling at Williams, balled up his fists, attempted to take off his shirt, and lunged at Williams. Plaintiff is a large man and he had a history of "act[ing] out of control," having "bucked a few times before on officers." Williams considered that

---

[1] For ease of reading, the Court has removed all docket and internal citations. Additionally, the facts as set forth in the Report are viewed in the light most favorable to Plaintiff as the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Page **2** of **14**

Plaintiff presented "a very serious threat of harm" who had the potential to seriously injure Williams or his fellow staff if they could not control Plaintiff and he overpowered them. Williams called "Team A," which responds to emergencies, such as "when inmates appear ready to fight and/or are refusing verbal commands to get in order."

Defendant Sergeant Dustin Cragg was the first to respond, and he pushed Plaintiff against a wall, handcuffed him, and took him to the ground. Defendant Major Carol Holmes also arrived on the scene, and she sprayed Plaintiff with a burst of chemical munitions while he was on his way to the ground ("the First Spray"). At that point, Plaintiff ceased resisting, struggling, kicking, or cursing. He lay on his stomach on the floor with Cragg holding him down and pressing down on his back with a knee or other body part. There were a total of five or six officers on the scene. Nonetheless, Williams directed Holmes to spray Plaintiff again "in the nose," and Holmes "got up close and personal and sprayed" chemical munitions up into his nose ("the Second Spray"). The total amount of munitions in the two sprays was eight grams. The Second Spray "hit [Plaintiff] hard." Afterwards, he could not breathe, mucous was coming out of his nose, and tears were coming out of his eyes.

Plaintiff was immediately taken to medical, where he rinsed his face and eyes several times in the eye-wash station and a nurse dabbed his face with a towel and applied an aloe-like soap to his face. Plaintiff did not have any cuts or open wounds and was not bleeding, and the nurse cleared him to be transferred. [While Plaintiff was at medical, the officers began to record their interactions with Plaintiff via a hand-held video camera].

With Plaintiff's uniform contaminated with chemical munitions, the officers decided to take Plaintiff's uniform off and replace it with one for suicidal inmates who will be housed in the CO. Accordingly, Plaintiff was then taken to RHU where he was placed in the corner of a small room with the door partially open. With his hands still handcuffed behind his back, Plaintiff was facing the corner and the events were still being recorded with the camera. Defendant Captain Debo, who, like Williams is male, removed Plaintiff's shirt and then his pants and underwear, and then put the new uniform on him, so that Plaintiff was naked for only "a couple of seconds." Because he was facing the wall, Plaintiff had only his bottom exposed to Debo and Williams and during the time Plaintiff was changing clothes, Debo and Williams stood between Plaintiff and the person holding the camera. At Debo's request, the camera was aimed above Plaintiff's waist. [Plaintiff testified that he

"felt like" a lady "probably was at the door . . . with the camera" and saw him when he was naked.]

Plaintiff's Complaint alleges that Defendants violated his Eighth and Fourteenth Amendment rights by using excessive force against him on September 9, 2021. Plaintiff further alleges that his rights were violated when he was subsequently forced to strip naked in front of male and female officers and when he was placed in a cell right next to one in which an inmate had previously committed suicide. Plaintiff also asserts claims for defamation, medical negligence, emotional distress, mental anguish/mental torture, and pain and suffering.

For his injuries, Plaintiff contends that both of his wrists were swollen after the incident and that he has experienced PTSD. For his relief, Plaintiff seeks reimbursement for his medical costs and an award of damages in the amount of $300,000. Plaintiff asserts his claims against Defendants purportedly in their individual capacities and official capacities. However, on July 6, 2022, the Court dismissed Plaintiff's official-capacity claims.

ECF No. 71 at 2–6.

## THE REPORT AND PETITIONER'S OBJECTIONS

Defendants moved for summary judgment asserting that they are entitled to judgment as a matter of law as to Plaintiff's § 1983 claim because there is no dispute of material fact that "Plaintiff suffered no violation of a constitutional right." ECF No. 51–1 at 8. Specifically, Defendants assert that (1) "Defendants Williams, Cragg, and Debo did not use excessive force," and (2) "[t]he amount of chemical munitions used [in the spray] was not constitutionally excessive." *Id.* at 10–15. Additionally, Defendants assert that, even if Plaintiff had suffered a deprivation of a constitutional right, Defendants are entitled to qualified immunity. *Id.* at 15–16. Next, with regard to Williams' role in the Second Spray, Defendants assert that Plaintiff cannot maintain a § 1983 claim based on bystander liability. *Id.* at 17. Finally, Defendants

Page **4** of **14**

moved for summary judgment regarding Plaintiff's invasion of privacy claim and state law claims. *Id.* at 18–20.

## I. THE REPORT

On September 20, 2022, the magistrate judge issued the instant Report. ECF No. 71. As set forth below, the Report addressed each argument made in Defendants' motion for summary judgment and recommended that their motion be granted in part and denied in part. *Id.*

### A. Plaintiff's Excessive Force Claim

First, as to the excessive force claim, the magistrate judge both addressed allegations of excessive force: (1) Cragg's "takedown" of Plaintiff and (2) Holmes and Williams' "Second Spray" of Plaintiff. *Id.* at 12–27. Regarding the takedown, the magistrate judge recommended that summary judgment be granted as to Cragg because "Plaintiff has not forecasted evidence on which a jury . . . could infer that Cragg acted out of an intent to retaliate against Plaintiff rather than out of a good-faith effort to gain control of the situation and protect all parties from the possibility of a significant injury." *Id.* at 15.[2]

---

[2] As noted by the Report, "forecast" is the legal term used when evaluating Plaintiff's proposed evidence at the summary judgment stage:

> The facts and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party, and [that] this party is entitled "to have the credibility of [their] evidence as forecast assumed, [their] version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to [them]."

*Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, (1991) (*quoting Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

Page **5** of **14**

Next, with regard to the "Second Spray," the magistrate judge recommended that the Court deny summary judgment as to Williams and Holmes. *Id.* at 16–26. Applying recent Fourth Circuit caselaw, the magistrate judge found that a jury "could reasonably infer that Holmes and Williams were attempting to retaliate against Plaintiff because of his recalcitrance rather than making a good-faith effort to get him to follow instructions." *Id.* at 20. In support of this, the Report noted that "Plaintiff forecasted evidence that, by the time of the Second Spray, he had completely stopped resisting, his hands were handcuffed behind his back, he was lying on his stomach, Cragg was on top of him holding him down, and several officers were on the scene." *Id.* (citing *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) ("[I]f a jury were to believe [the prisoner's] allegation that he was on the ground, already restrained in handcuffs when [the officer] deployed the pepper spray, the jury could conclude that [the prisoner] was subjected to unconstitutionally excessive force.") (alterations in Report)).

### B.     Defendants' Qualified Immunity Defense

The Report also addressed Williams and Holmes' qualified defense, specifically addressing their argument that "there was no case law that would have put them on notice that the *quantity* of chemical munitions Holmes used—eight grams—was excessive." *Id.* at 26–27 (emphasis in original). The Report noted that "the quantity of chemical munitions employed is not the basis of Plaintiff's claim that the force employed was excessive." *Id.* at 27. Hence, the magistrate judge found Defendants' qualified immunity defense was not a basis for relief and recommended that their

motion for summary judgment be denied with regard to Plaintiff's excessive force claim against both Holmes and Williams. *Id.*

### C.  Plaintiff's Right-to-Privacy Claim

The Report next addressed Plaintiff's claim that Debo violated his right-to-privacy by requiring him to change his uniform while a woman was watching. *Id.* at 28. The magistrate judge noted that "prisoners have only a very limited right of bodily privacy from guards of the opposite sex" and that, "even assuming the officer holding the camera was female, Plaintiff's claim cannot survive summary judgment." *Id.* (citations omitted). In support of this conclusion, the magistrate judge noted (1) Plaintiff does not dispute he needed a uniform change, (2) Plaintiff has not forecasted any evidence that his genitals were visible to any of the officers, (3) Plaintiff concedes his backside was bare for only a couple of seconds, and (4) Plaintiff agrees that his backside was visible to Williams and Debo, both of whom are male. *Id.* at 28–30. For these reasons, the magistrate judge recommended that summary judgment be granted as to Plaintiff's right-to-privacy claim against Debo. *Id.* at 30.

### D.  Plaintiff's Additional Claims

Finally, the Report addressed Plaintiff's remaining claims for "defamation, medical negligence, emotional distress, and mental anguish/ mental torture." *Id.* The magistrate judge recommended granting Defendants' motion for summary judgment as to these claims because (1) they are state law claims that do not rise to the level of a constitutional violation and (2) they are subject to the South Carolina Tort Claims Act, S.C. Code § 15–78–10, *et seq.*, under which Plaintiff must sue the government

entity employing the alleged tortfeasor, which Plaintiff has not done in this instance. *Id.* at 31.

## II. DEFENDANTS' OBJECTIONS

As noted, only Williams has filed objections to the Report. ECF No. 73. His objection, moreover, is only limited to one of the Report's recommendations, specifically, "the portion of the R&R that states that Williams could be held personally liable under Plaintiff's theory of excessive force." *Id.* at 1. Williams asserts that the magistrate judge erred in "rel[ying] on South Carolina District Court cases involving unlawful search and seizure claims" to find that Williams "could be held liable for someone else's excessive force if [he] had not used force." *Id.* at 2–3. The two cases cited by the magistrate judge are *Smith v. Charleston Cnty. Sheriff's Off.,* No. CV 2:16-655-BHH, 2019 WL 1306077 (D.S.C. Mar. 22, 2019) and *Hodge v. City of N. Charleston*, No. 220CV02560DCNMGB, 2021 WL 960508, at *1 (D.S.C. Mar. 15, 2021). ECF No. 71 at 25. Williams submits that these cases are inapplicable because, "while this theory of liability is plausible in a search and seizure claim, it does not bear the same plausibility in an excessive force claim." ECF No. 73 at 2.

### STANDARD OF REVIEW

In conducting its review, the Court applies the following standard:

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections.... The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other

> standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

## ANALYSIS

The Court has carefully reviewed the Report and Williams' objection and has conducted a *de novo* review of the objected to portion of the Report. The essence of Williams' objection is that the magistrate judge erred in concluding that Williams could be liable to Plaintiff for excessive force based on his alleged instruction to Holmes to spray Plaintiff again in the nose. In support of this argument, Williams asserts (1) that the cases the magistrate judge used to support her conclusion that Williams could be "indirectly" liable for Holmes' actions are inapplicable, and (2) even if Williams could be held liable for excessive force, he is entitled to summary judgment because "[t]he case law was not so clearly settled that Williams would have been on notice that he was violating Plaintiff's constitutional rights." ECF No. 73 at 4–5.

The Court is not persuaded by Williams' argument that he could not "be held liable on a theory of indirect use of excessive force" and that Defendant was not on notice. *Id.* at 4. The caselaw suggests otherwise, especially when an individual has an alleged role in the use of excessive chemical munition. The Court does not only judge the use of excessive force on whether it was applied directly or indirectly by an

individual but, rather, looks at the underlying tort principle of causation when evaluating an individual officer's liability for excessive force. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("Constitutional torts . . . require a demonstration of both but-for and proximate causation."). As relevant here, "§ 1983['s] causation language, 'subject [ ] or cause [ ] to be subjected,' imposes liability not only for conduct that directly violates a right but for conduct that is the *effective cause of another's direct infliction* of the constitutional injury." *Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998) (alterations in original, emphasis added).[3] "This principle of effective causation by indirect means, grounded in the literal language of § 1983 and in general tort law . . . has been widely recognized and applied in § 1983 litigation. *Id.* (citations omitted) (collecting cases). Accordingly,

> The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Id.* (quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 560–61 (1st Cir. 1989) (Bownes, J.) (citations and quotations omitted)); *see also Marc Stout &*

---

[3] Section 1983's unedited causation language states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

*Jacqueline Stout v. Baroody*, No. 3:21CV476, 2022 WL 3325780, at *5 (E.D. Va. Aug. 11, 2022) (denying a motion to dismiss a § 1983 claim brought by protestors against two officers who directed other officers to pepper spray the protestors because, by instructing the other officers to use pepper spray, the two officers "helped effectuate" the alleged constitutional violation) (citing *Sales*, 158 F.3d at 776).

In applying this caselaw to the instant case, this Court concludes that Plaintiff—in viewing the facts in the light most favorable to him as the nonmoving party—has offered sufficient evidence creating a genuine dispute of material fact as to whether Williams' alleged instruction was the but-for cause of the Second Spray. The Report states:

> a reasonable jury could credit Plaintiff's testimony that Williams asked Holmes to administer a second spray directly into Plaintiff's nose, and from the fact that Holmes did just that—even touching Plaintiff's nose with the sprayer—the jury could conclude that she heard Williams's request and reacted to it. A jury could also reasonably find that it is more likely than not that Holmes would not have administered the Second Spray to Plaintiff when he was restrained and fully compliant had Williams not requested that she do so.

ECF No. 71 at 26 (internal docket citations omitted). In summary, based on the evidence offered by Plaintiff, a jury could find that Williams "set[ ] in motion a series of acts which [he] [knew] or reasonably should [have known] would cause others to inflict the constitutional injury." *Sales*, 158 F.3d at 776. Therefore, based on the factual dispute, and after an analysis of the relevant caselaw before it, the Court overrules Williams' objection that the magistrate judge erred in concluding that there is a basis to find Williams could be liable to Plaintiff for the "indirect" use of excessive

force. The factual disputes and relevant caselaw provide a basis to deny Williams' motion for summary judgment. A jury will decide the factual dispute regarding the use of excessive force.

The latter part of Williams' objection re-raises his qualified immunity defense on the basis that "the case law was not so clearly settled that Williams would have been on notice that he was violating Plaintiff's constitutional rights." ECF No. 73 at 5. Here, as noted by the magistrate judge,[4] because the Court concludes that Plaintiff has alleged a deprivation of a constitutional right, it moves on to the second prong of the qualified immunity analysis: whether the right was clearly established at the time the violation occurred such that a reasonable person would have know that his conduct was unconstitutional." ECF No. 71 at 11 (quoting *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)). For purposes of this analysis, a right is "clearly established" if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Court, based on the caselaw cited, accepts the magistrate judge's recommendation that Williams is not entitled to summary judgment on the basis of qualified immunity. The caselaw provides that an officer on the date of the asserted

---

[4] *See* ECF No. 71 at 10–11 ("'In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry.' *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The first concerns whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a federal right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second "asks whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Smith*, 781 F.3d at 100.")

violation, would have a basis to know that § 1983 "imposes liability not only for conduct that directly violates a right but for conduct that is the effective cause of another's direct infliction of the constitutional injury." *Sales*, 158 F.3d at 776. Additionally, as noted by the magistrate judge, an officer on the date of the asserted conduct, would have known 'that inmates have a right to be free from pain inflicted maliciously and in order to cause harm, rather than in a good-faith effort to protect officer safety or prison order. ECF No. 73 at 27 (quoting *Dean v. Jones*, 984 F.3d 295, 310 (4th Cir. 2021)). Taken together, a reasonable officer would be on notice on September 9, 2021, that his instruction to re-spray a subdued inmate could be the effective cause of a direct violation of a constitutional right. Therefore, the Court overrules Williams' objection—again, based on the relevant caselaw—concluding that the Report sets forth a legal basis to find that Williams is not entitled to summary judgment on the basis of qualified immunity. The jury will have to decide, ultimately, if the use of force was reasonable in this case.

## CONCLUSION

For the reasons stated both herein and by the magistrate judge, the Report, ECF No. 71, is **ACCEPTED**. Williams' objections, ECF No. 73, are **OVERRULED**. The Court **DENIES IN PART** and **GRANTS IN PART** Defendants' motion for summary judgment, ECF No. 51. Specifically, the motion is **DENIED** with regard to Plaintiff's excessive force claim against Holmes and Williams but otherwise **GRANTED** as to

all other remaining claims.[5]

   IT IS SO ORDERED.

                 <u>s/ Terry L. Wooten</u>
                 Terry L. Wooten
                 Senior United States District Judge

February 7, 2023
Columbia, South Carolina

---

[5] This includes (1) Plaintiff's excessive force claim against Cragg, (2) Plaintiff's right-to-privacy claim against Debo, and (3) Plaintiff's additional state law claims.